(No. 5237. December 2, 1929.)

THE COUNTY OF FREMONT, Political Subdivision of the State of Idaho, Respondent, v. LUCY H. SALISBURY, Defendant, and FIDELITY & DEPOSIT COMPANY OF MARYLAND, a Corporation, Appellant.

[285 Pac. 459.]

Frank T. Wyman, for Appellant.

N. D. Jackson and Hawley & Hawley, for Respondent.

BRYAN, Commissioner.—Lucy H. Salisbury was treasurer of Fremont County during the years 1923 and 1924. As treasurer, she gave a bond for $25,000, with the appellant, Fidelity & Deposit Company, as surety. It was to recover on this bond that this action was instituted. The treasurer was not served with summons, neither did she appear. Appellant is not obligated under any bond as tax collector.

The First National Bank of St. Anthony had been designated as county depository, with a maximum deposit limit fixed at $12,750. On February 8, 1924, the depository bank was insolvent, and on said date closed its doors and surrendered to the comptroller of the currency of the United States all its assets for liquidation. When the doors of the bank were closed, the county had on deposit moneys of Fremont County to the total amount of $23,035.61. Of this sum, it is conceded that $16,203.53 had been deposited by the treasurer. There was, therefore, an admitted excess deposit of $3,453.53, for which appellant is liable. It is the remaining sum of $6,832.08, the difference between the

gross excess deposit of $10,285.61 and the admitted excess deposit as treasurer of $3,453.53, that is involved here. The question to be determined is whether, at the time the bank failed, Mrs. Salisbury, as tax collector, had turned this sum of money over to herself as treasurer, as contemplated by law. If she had, appellant's bond is liable for the amount, and the judgment should be affirmed. If the money was still in the hands of the tax collector, the judgment is excessive and should be modified.

Admittedly, this money had been collected as delinquent taxes, and had been received by the tax collector in her capacity as such, and not as treasurer. After this money was collected, it was deposited in the bank to the credit of the tax collector. For this proceeding, there is no sanction in the law.

Counsel for respondent contend that the office of county treasurer includes that of tax collector, and that a treasurer's bond is liable for defaults and official misconduct of both officers. With this contention, we are not able to agree. Since the first session of the Idaho Territorial Legislature, held in 1863 and 1864, the statutes have provided for a tax collector, and required that a separate bond be given by such officer. (First Idaho Ter. Sess. Laws, p. 406.) When Idaho was admitted to the Union, in the Constitution it was provided (art. 18, sec. 6) that "The Legislature, by general and uniform laws, shall provide for the election biennially, in each of the several counties of the state, of county commissioners, .... county assessor, who is *ex officio* tax collector. .... "

This provision had the effect of constituting the office of tax collector a constitutional office. In 1912, section 6, article 18, of the Constitution was amended so as to provide that the county treasurer should be *ex-officio* tax collector. In the following year, the legislature provided (Sess. Laws 1913, p. 214):

"The tax collector shall be liable upon his official bond for the amount of all taxes entered upon the real property

assessment roll which have not been collected or accounted for in his settlement with the county auditor.''

This enactment has never been repealed, but now appears as C. S., sec. 3245. Thus, ever since 1863, throughout territorial days, and also ever since admission to the Union, there has been in this state an office known as that of tax collector. Originally, it was held by the sheriff; later by the assessor; and now by the treasurer. During the entire period the offices were separate and distinct. At all times the tax collector has been required to take a separate oath and give a separate bond. This bond alone is liable for the faithful performance of his duties as such officer.

There is no dispute as to the controlling facts. It is conceded that the $6,832.08 involved here are delinquent taxes, collected by the defendant officer in her capacity as tax collector. The question to be determined is whether, prior to the closing of the bank, this officer had transferred this money to the county treasurer, so as to constitute it a treasurer's fund, as distinguished from a tax collector's fund. If such transfer was made, it was by virtue of the following transaction: The money had been deposited in the bank to the credit of the tax collector. On February 4, 1924, she drew on this account a check (exhibit "E") on herself as tax collector, payable to herself as treasurer, for the amount in controversy, and placed the same, without indorsement, in the treasurer's cash till, where it remained until February 7th. On that date, while the cashier was in her office at the courthouse, she handed this check to him for deposit in her treasurer's account. He entered the amount of it in her pass-book, initialed and delivered to her a duplicate deposit slip, and took the original, together with the check, to the bank. The doors of the bank were open, but for several days prior to and including the 7th, it had not been receiving deposits, nor putting any transactions through its books. This check, in common with all others received during that period, was put aside in a separate file, not entered upon its books, nor placed among the assets of the bank. When the cashier took the check, he knew

that he could not put the transaction through the books, nor receive the amount represented by it as an asset of the bank. Later, and during the same day, the cashier returned the check to the treasurer, told her of the condition of the bank, and that it could not receive the check. The treasurer accepted the check, and wrote upon its face, "Returned on Seventh." No notation or entry was made on the official records of the treasurer or tax collector, indicating transfer of these funds from the tax collector's account to that of the treasurer. There was no auditor's certificate authorizing the transfer of these funds from the office of tax collector, as required by C. S., sec. 3325. For the treasurer to have received the fund without such certificate, would constitute a clear violation of C. S., sec. 3564, in which it is provided he must receive no money into the treasury unless accompanied by the certificate of the auditor. Moreover, the deposit of this money in the treasurer's account in the depository bank would have been an excess deposit, and under the statute a crime.

We conclude that these transactions did not constitute a valid transfer of this fund to the treasurer. Two weeks after the bank suspended, defendant Salisbury presented to the receiver her verified claim for this money, in which she swore it was due her as tax collector. It follows that the treasurer's bond is not liable on account of its loss by the county. The judgment was therefore excessive.

I recommend that the judgment be modified, and that the trial court be directed to enter judgment against appellant in the sum of $3,453.53, with interest, subject to any showing which may hereafter be made as to payments made since the trial, and any offer of judgment. Costs to appellant.

The foregoing is approved as the opinion of the court, and the judgment is modified in accordance with the views therein expressed. Costs to appellant.

Givens, T. Bailey Lee, Wm. E. Lee and Varian, JJ., concur.

Budge, C. J., did not sit.